*297 OPINION,
Siefkin :
The principal question to be decided is whether the respondent erred in failing to hold that the petitioner, during the year 1921, was within the provisions of section 327 (a), (c) and (d) of the Revenue Act of 1921, and was, therefore, entitled to have its excess-profits tax computed under section 328 of that Act. The petitioner also alleges that the respondent improperly determined its invested capital.
Section 327 of the Revenue Act of 1921 provides:
That in the following cases the tax shall be determined as provided in section 328:
(a) Where the Commissioner is unable to determine the invested capital as provided in section 326;
* * * * * * *
(c) Where a mixed aggregate of tangible property and intangible property has been paid in for stock or for stock and bonds and the Commissioner is unable satisfactorily to determine the respective values of the several classes of property at the time of payment, or to distinguish the classes of property paid in for stock and for bonds, respectively;
(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital, nor (2) in which 50 per centum or more of the gross income of the corporation for the taxable year (computed under section 233 of Title II) consists of gains, profits, commissions, or other income, derived on a cost-plus basis from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.
The evidence in this case discloses that the petitioner was organized on October 2, 1915, and that it took over the assets of a predecessor corporation of the same name whose charter had expired on January 7, 1915, and assumed the liabilities of the old corporation. In consideration thereof, the petitioner issued the full amount of its capital stock, par value $75,000, to the stockholders of the old corporation. The minutes of a meeting of the stockholders of petitioner recited that the said stockholders were of the opinion that all the property was of the fair cash value of $75,000.
*298 Part of the assets taken over as evidenced by the books of the old corporation were as follows:
Merchandise-$68, 425. 87
Gash_ 3, 731. 80
Real estate_ 60, 555. 28
Cottages- 2. 500. 00
Fixtures_ 46, 311. 50
Live stock_ 15, 460. 00
Wagons_ 15, 565. 00
Harness_ 1, 094. 00
Bills receivable_ 4, 277. 24
Accounts receivable_ 3,431. 66
Routes — 1 to 28 (accounts receivable)- 12,263.93
233, 616. 28
The petitioner assumed bills payable in the amount of $15,000. and accounts payable in the amount of $33,811.11.
The assets taken over by the petitioner were carried on the books of petitioner at the same values as they appeared on the books of the old corporation, no attempt being made at that time to revalue them. Charles H. Moody, who was a director of both the old corporation and the petitioner, and who ivas president of the petitioner in 1921, testified at the hearing that the assets at .the time taken over, with the exception of bills receivable, accounts receivable and possibly merchandise, were of twice the value that they were carried on the books of the old corporation. He stated that the figures on the old corporation’s books represented cost of assets less depreciation, but on cross-examination stated that he did not know that depreciation was taken on any of the assets, with the possible exception of horses and wagons two years before they were transferred to the petitioner.
The real estate taken over included land carried on the books of the old corporation at $23,000, which represented its cost in 1889. Included in the real estate was also a building on this land, part of which was constructed in 1890 and a part of which was constructed in 1910. It was carried on the books at cost. No evidence was submitted to show the value of the land or the buildings taken over, the testimony being only that the land had increased in value between 1890 and 1915, without any definite indication of the extent of such increase.
Live stock taken over by the petitioner represented 90 horses. Moody testified that in 1915, when acquired by the petitioner, their value was 50 per cent greater than the value at which they were carried on the books of the old corporation.
The wagons taken over by the petitioner had been in use for a varying number of years. Repairs had been made and charged tc *299 expense on the books of the old corporation, and the cost of the new wagons purchased had been charged to expense.
The petitioner took over between 2,000 and 2,500 pie cases which the old corporation had manufactured, the cost of which had been charged to expense on the books. The petitioner never carried these cases on its books at any value. Moody testified that their fair market value in October, 1915, was $5 each. The petitioner also took over about 100 shipping pie cases which it did not enter on its books. The cost of these had been charged to expense on the books of tire old corporation. Moody testified that in October, 1915, they were worth $10 each.
The petitioner also continued to use the trade-mark “ Home Made Pies ” which had been in use by the predecessor corporation and its predecessor partnership.
The petitioner alleges and we find that in 1915, when the petitioner was organized, there was paid in to it an aggregate of tangible and intangible property for stock. The intangible property was good will which, upon the books, was not assigned any value.
The minutes of a meeting of the stockholders recited that the value of all the property received Avas $75,000, and this value was used by the respondent in computing invested capital of the petitioner. Charles H. Moody testified that the books did not represent the true value of the assets. No attempt was made by the petitioner to show Avhat the value of the real estate was in 1915, nor Avas any evidence adduced to show that it Avas impossible to prove what the value was. Moody testified that the horses were worth 50 per cent more in 1915 than their cost, which was the figure at which the horses were entered on the books of the old corporation. Moody testified also that the pie cases acquired by the petitioner at organization numbered between 2,000 and 2,500 and that they had a value in October, 1915, of $5 each, and that the petitioner also acquired about 100 shipping pie cases having a value at the time of acquisition of $10 each. The petitioner contends that since the exact number of cases acquired is not known, the invested capital of the petitioner for 1921 can not be determined as provided in section 326 of the Revenue Act of 1921. However, if we took these approximate figures at the Avalúes shoAvn by the petitioner, it is our opinion that the invested capital of the petitioner would not be greatly misrepresented.
Good will was never entered on the books of the petitioner at any value, nor has the petitioner shown what the value thereof Avas at the time acquired, or that it had any value at all. Evidence of earnings and gross sales for the five years prior to the organization of the petitioner was adduced, but the tangible assets and their value for those years were not shown.
*300 From all the evidence we conclude that the petitioner has failed to show that it comes within the provisions of subdivision (c) of section 327. Nor does the testimony of Charles H. Moody, president of the petitioner, to the effect that it can not now be determined what property in use by the petitioner in 1921, had been acquired at organization in 1915, bring the petitioner within the provisions of subdivision (a) of section 327.
In 1921, Moody received a salary of $14,000. He testified that he would not have worked for any other corporation for this salary and statqd that he believed his services were worth $25,000. This alone does not entitle petitioner to special assessment under the provisions of subdivision (d) of section 327, no showing having been made that the Jow salary creates such an abnormality as would work an exceptional hardship upon the petitioner. See United Shoe Stores Co., 2 B. T. A. 73, and Eagle Piece Dye Works, 10 B. T. A. 1360. It is our conclusion that the petitioner is not entitled to' special assessment for the year 1921 on that ground.
'VThe petitioner also assigns as error that the respondent improperly determined petitioner’s invested capital for the year 1921. However, the petitioner has failed to submit sufficient proof to overthrow the presumption of the correctness of the respondent’s determination in this respect.

Judgment will be entered for the respondent.